UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| DANIEL BISSONNETTE | ) |
| Plaintiff, | ) Civil Action No. 5:23-cv-343 |
| v. | ) |
| | ) **JURY DEMANDED** |
| RED HAT, INC. | ) |
| Defendant. | ) |

**COMPLAINT**

1. Plaintiff Daniel Bissonnette brings this action individually against Defendant Red Hat, Inc. ("Red Hat") and its subsidiaries and affiliates, alleging that Red Hat has violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1461, *et seq*., in connection with recent employee layoffs, terminations, and constructive discharges that targeted older workers, including Plaintiff, disproportionately to younger workers.

2. Red Hat is wholly owned by International Business Machines Corp., Inc. ("IBM"), which itself has undergone an Equal Employment Opportunity Commission ("EEOC") investigation, as well as numerous lawsuits and arbitrations over the last five years, for age discrimination in using layoffs to terminate systemically its older workers in order to build a younger workforce. Indeed, on August 31, 2020, the EEOC issued a determination finding reasonable cause that IBM engaged in discrimination on a companywide basis. As described below, Plaintiff alleges that Red Hat is now engaged

1

in a similar discriminatory effort to remove its older workers across the company to build a younger workforce, and that his termination was part of that discriminatory effort.

## II. PARTIES

3. Plaintiff Daniel Bissonnette is fifty-six (56) years old and resides in Mesa, Arizona. Mr. Bissonnette was hired by Red Hat in June 2019, approximately one week prior to IBM's acquisition of Red Hat, and worked for Red Hat as a Senior Director, Strategic Pursuit Practice, for more than three years prior to being laid off on January 12, 2023. Mr. Bissonnette was fifty-five (55) years old at the time of his termination.

4. Defendant Red Hat, Inc. ("Red Hat") is a Delaware corporation with its principal place of business in Raleigh, North Carolina. Red Hat is an American software company with offices in the United States and worldwide that offers open source software products and services to businesses and enterprises.

## III. JURISDICTION AND VENUE

5. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff has brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

6. The Eastern District of North Carolina is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because Red Hat's principal place of business is Raleigh, North Carolina.

## IV. STATEMENT OF FACTS

7. Red Hat is a software company that employs thousands of people across the United States.

8. Red Hat is wholly owned by IBM and has followed IBM's lead in engaging in a companywide effort to reduce its employment of older workers (through layoffs and other means of termination and constructive discharge) in order to build a younger workforce.

9. Since 2018, it has been widely publicized that IBM has been engaged in a years-long scheme to terminate older employees in order to build a younger workforce.

10. These allegations became widely publicized after the publication of an investigative article by ProPublica. See Peter Gosselin and Ariana Tobin, "Cutting 'Old Heads' at IBM", ProPublica (March 22, 2018), available at https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/.

11. As reported by ProPublica, IBM's shift in focus toward a "millennial" workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." In response to that problem, ProPublica reported, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980."

12. Following the publication of that article, a number of lawsuits were filed against IBM for age discrimination, including collective actions such as Rusis v. International Business Machines Corp., C.A. No. 1:18-cv-08434 (S.D.N.Y.), as well as many hundreds of individual arbitration cases (cited in In Re: IBM Arbitration Agreement Litig., No. 22-1728 (2d Cir.)).

3

13. Further, the EEOC conducted an investigation of IBM for age discrimination and reached a probable cause determination, finding that "there is reasonable cause to believe that [IBM] has discriminated against Charging Parties and others on account of their age." This determination stemmed from the EEOC's analysis of data which it found "between 2013 and 2018 [] had an adverse impact on employees in the protected age group". The EEOC also found that "top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers."

14. As a result of those revelations and litigation, shocking evidence of IBM's age discrimination came to light, including evidence that top executives at IBM emailed with one another about "a plan to 'accelerate change by inviting the 'dinobabies' (new species) to leave' and make them an 'extinct species.'" Noam Scheiber, "Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force", New York Times (February 12, 2022), available at https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html.

15. On July 9, 2019, IBM acquired all of Red Hat's issued and outstanding common shares in a $34 billion stock purchase acquisition. See IBM Newsroom, "IBM Closes Landmark Acquisition of Red Hat for $34 Billion; Defines Open, Hybrid Cloud Future" (July 9, 2019), available at https://newsroom.ibm.com/2019-07-09-IBM-Closes-Landmark-Acquisition-of-Red-Hat-for-34-Billion-Defines-Open-Hybrid-Cloud-Future.

16. Although IBM claimed that Red Hat would maintain its independence and neutrality, Red Hat's President and CEO at the time of the acquisition, Jim Whitehurst, joined IBM's senior management team and reported to IBM CEO Virginia Rometty, the

architect of IBM's age discrimination scheme. See id. Indeed, it appears that Red Hat has adopted IBM's playbook of age discrimination. Since at least December 2022, Red Hat has laid off hundreds of employees, a group which, upon information and belief, appears to have included a disproportionately high number of employees over the age of forty (40). See Zachery Eanes, "Red Hat lays off 4% of its workforce", Axios (April 24, 2023), available at https://www.axios.com/local/raleigh/2023/04/24/red-hat-lays-off-4-of-its-workforce.

17. Plaintiff was hired by Red Hat in June 2019, approximately one week prior to IBM's acquisition of the company. He worked at Red Hat for more than three years thereafter as a Senior Sales Director of the Strategic Pursuit Practice in North America.

18. In that capacity, Plaintiff built and lead a team of over 20 people, the majority of whom were younger than him. Plaintiff's department, the Strategic Pursuit Practice, was a sales team focused on high value targets and strategic opportunities in North America.

19. The North American Strategic Pursuit Practice was, by all measures, highly successful under Plaintiff's leadership. For example, his team closed the largest deal in Red Hat's history, valued at $1.2 billion, in 2020. Plaintiff and his team members all consistently hit their sales targets, and Plaintiff occasionally exceeded his targets by 300 percent.

20. Toward the end of Plaintiff's tenure at Red Hat, he noticed that the company was engaging in a concerted effort to recruit and hire younger sales professionals. For example, the company began publishing spreadsheets breaking down employee demographics, including their gender, age, and race.

5

21. On one occasion at the beginning of 2022, Plaintiff's manager, Matt Simontacchi, who managed sales for all of the Americas, stated in a call with Plaintiff and other members of sales leadership that the company wanted to bring in "young and beautiful" salespeople. Plaintiff's manager made this comment while reviewing one such spreadsheet breaking down Red Hat employee demographics.

22. Beginning in July 2022, approximately 12 of Plaintiff's team members, all of whom were younger than he was, were moved from Plaintiff's North America-focused department to another, Global-focused department, which was a more desirable department. After the 12 younger team members were moved to Global, eight individuals remained on Plaintiff's team. Nearly all of the remaining team members were Plaintiff's age or older.

23. Plaintiff was told in about July 2022 that he, too, would transition to a Global position based in Barcelona.

24. Instead, he was suddenly informed on December 12, 2022, that there was no such job for him and that he was being laid off effective January 11, 2023.

25. Red Hat also laid off three of Plaintiff's team members at this time, all of whom were over the age of 40.

26. Further, Plaintiff was presented with a severance agreement containing Older Worker's Benefit Protect Act ("OWBPA") disclosures regarding the job titles and ages of other individuals in his "Decisional Unit", defined as "Strategic Account Executives sitting in the NA Enterprise Sales Organization Strategic Pursuit Practice team", who were notified that they were being laid off on December 12, 2022. The OWBPA disclosures reflected that four individuals, all of whom were over the age of 40

6

Case 5:23-cv-00343-M-BM    Document 1    Filed 06/23/23    Page 6 of 9

were laid off, while three individuals, who were also over the age of 40, were being retained. However, the OWBPA disclosures were incomplete because they *did not* list the 12 team members who were moved to the Global department, all of whom were much younger than Plaintiff.

27. Plaintiff's employment terminated on January 12, 2023. At that time, he was fifty-five (55) years old.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

28. Plaintiff filed a timely charge of discrimination before the EEOC, which was cross-filed with the Arizona Attorney General's Office. Plaintiff received a Notice of Right to Sue on March 28, 2023, and has filed the instant lawsuit within 90 days of receiving that Notice.

## COUNT I

### AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)
### 29 U.S.C. § 621, *et seq.*

Defendant's conduct in targeting for separation employees who are older than age forty (40), including Plaintiff, in order to build a younger workforce, constitutes age discrimination in violation of the ADEA. Defendant's violation of the ADEA has been knowing and willful.

## COUNT II

## ARIZONA CIVIL RIGHTS ACT (ACRA)
## A.R.S. § 41-1461, *et seq.*

Defendant's conduct in targeting for separation employees who are older than age forty (40), including Plaintiff, in order to build a younger workforce, constitutes age discrimination in violation of the ADEA. Defendant's violation of the ACRA has been knowing and willful.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Find and declare that Red Hat violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and the Arizona Civil Rights Act, A.R.S. § 41-1461, *et seq.*;

2. Award compensatory damages, including back pay and front pay, in an amount according to proof;

3. Reinstate Plaintiff to his position;

4. Award all costs and attorney's fees incurred prosecuting this claim;

5. Award liquidated damages and all appropriate statutory and regulatory damages;

6. Award interest;

7. Issue injunctive relief in the form of an order directing Defendant to comply with the ADEA and the ARCA; and

8. Any other relief to which the Plaintiff may be entitled.

Dated: June 23, 2023

        Respectfully submitted,

        DANIEL BISSONETTE,

        By his attorneys,

        <u>s/ Philip J. Gibbons, Jr.</u>
        Philip J. Gibbons, Jr.
        North Carolina Bar No. 50276
        Corey M. Stanton
        North Carolina Bar No. 56255
        Gibbons Law Group, PLLC
        14045 Ballantyne Corporate Place, Suite 325
        Charlotte, NC 28277
        Phone: (704) 612-0038
        Email: phil@gibbonslg.com

        Shannon Liss-Riordan
        (Special Appearance forthcoming)
        Thomas Fowler
        (Special Appearance forthcoming)
        Matthew Carrieri
        (Special Appearance forthcoming)
        Lichten & Liss-Riordan, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        Phone: (617) 994-5800
        Email: sliss@llrlaw.com, tfowler@llrlaw.com,
        mcarrieri@llrlaw.com